EUGENIO PADILLA-RÍOS, Petitioner and Appellee, v. JUSTICE OF THE PEACE OF MARICAO, INSULAR BOARD OF ELECTIONS and E. W. KEITH, SUPERVISOR OF ELECTIONS, Respondents and Appellants.

No. 3618.   Argued November 12, 1925.—Decided April 12, 1926.

M. Romany, District Attorney, and Angel A. Vázquez for the appellants. Benet & Souffront for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Eugenio Padilla filed in the District Court of Mayagüez

a petition in certiorari for the purpose of obtaining a review by that court of the proceedings in the Justice of the Peace Court of Maricao in an appeal taken by Tomás Quintana from a decision of the Insular Board of Elections refusing to exclude Padilla from the electoral lists of the municipality of Maricao. The writ was issued and at the hearing the petitioner and the justice of the peace appeared by attorneys. The district court set aside the judgment of which the petitioner complained and the justice of the peace took the present appeal, assigning error in his brief as follows:

"1. The court erred in admitting at the hearing in certiorari evidence *dehors* the return.

"2. The court erred in sustaining the certiorari proceeding notwithstanding the fact that the return showed that the proceeding prescribed by law was followed in the trial in the Peace Court by summoning Eugenio Padilla, and that the said court acted with jurisdiction.

"3. The court erred in adjudging that the defendant pay the costs."

██ We agree with the appellants that it is a settled rule that in certiorari proceedings the court that issues the writ is limited in deciding the question raised to what the return shows.

In the case of *Rodríguez* v. *Municipal Assembly of Guánica*, 31 P.R.R. 469, this court quoted the following from Spelling and Corpus Juris:

"In certiorari there is no formal pleading on the part of the defendant. The return takes the place of an answer in an ordinary action, and is sometimes designated as such. The only office which the common law writ of certiorari performs is to have certified the record of a proceeding from an inferior to a superior tribunal, and it is the duty of the inferior body to whom it is directed to transmit a complete transcript of the record, properly certified, to the court awarding the writ, without any statement of facts *dehors* the record." 2 Spelling's Injunctions and Other Extraordinary Remedies, p. 1733.

". . . . The return to the writ constitutes the answer, as well as evidence, and the case is heard thereon, unless upon motion an

additional or amended return is made. Stumpf v. San Luis Obispo County, 131 Cal. 364, 366, 63 P. 663, 82 Am. S. R. 350. . . .'' 11 C. J. 156, note 37 (*a*).

In recent years the Legislative Assembly has established certiorari proceedings in certain cases. This proceeding has been considered by this court as ''special certiorari'' to which the rules of common law certiorari must be applied as far as possible, but admitting certain variations consistent with the nature of the matter and tending to give effect to the intention of the Legislature. In regard to this it seems well to quote what this court said in the case of *People* v. *Oms,* 34 P.R.R. 435, 436, as follows:

''(2) The certiorari proceeding referred to, while from the use of the name may have some of the characteristics of a classical writ of certiorari, is not limited to an examination of the official returns. The protests, the affidavits filed before the board, and possibly some evidence *aliunde,* especially if discovered recently, might be revised in a certiorari proceeding. The idea of the Legislature was to supply a writ for the correction of election abuses, and, similarly to the Municipal Law and the Workmen's Compensation Law, the Legislature has given a remedy. To limit it to the official returns would render the writ in some cases completely nugatory.''

The case now under consideration is not really a special certiorari proceeding to which we have just referred. The District Court of Mayagüez could issue the writ only by virtue of the power granted by the general Certiorari Act of 1904 (Comp. 1911, secs. 1349 to 1353). Such being the case and it appearing that the court admitted evidence *dehors* the return, it must be acknowledged that the court erred. But in our opinion that error is not prejudicial, because the lack of jurisdiction of the Peace Court of Maricao over the person of the petitioner appears from the return itself, as we shall see at once upon considering the second assignment of error.

The return to the writ shows that on July 29, 1924, attorney R. A. Saliva presented a writing in the Justice of the Peace Court of Maricao in the matter of Tomás Quintana

by which the latter appears as appealing from a decision of the Insular Board of Elections dismissing his petition for the exclusion of Eugenio Padilla and Juan B. Martínez as electors. It does not appear that the notice of appeal was served on petitioner Ríos.

On August 6, 1924, the justice of the peace court made an order as follows:

"In view of the fact that this is a matter of an urgent character and is pending hearing and decision, the court, on its own motion, sets the eighth day of August, 1924, at nine o'clock a. m. for the trial. And the court directs the summoning of Tomás Quintana, Eugenio Padilla Ríos, Juan Bautista Martínez Rivera, José Avilés, and attorneys Rafael A. Saliva and Angel A. Vázquez."

Then a summons was issued as follows:

"United States of America.—The President of the United States, SS.—The People of Porto Rico versus Eugenio Padilla Ríos.—In the Justice of the Peace Court of Maricao, Porto Rico.—The People of Porto Rico to Eugenio Padilla Ríos, Rafael A. Saliva, Tomás Quintana and Angel A. Vázquez.—You are hereby cited and admonished to appear before this Justice of the Peace Court of Maricao, Porto Rico, on August 8, 1924, at nine o'clock in the morning, as a witness in a civil proceeding brought by Tomás Quintana against Eugenio Padilla Ríos by virtue of an appeal taken from an order of the Insular Board of Elections, and if you fail to appear you will be guilty of contempt of court.—Issued under my signature at Maricao, Porto Rico, this sixth day of August, 1924.—(Signed) Francisco Miró, Acting Justice of the Peace.—(Signed) Tomás Quintana.—A. Vázquez."

Another document reads as follows:

"Summons of witnesses by Ramón Liquet.—In the Justice of the Peace Court of Maricao, P. R.—In the matter of Tomás Quintana.—Appeal from the Insular Board of Elections on registrations.—Affidavit.—I, Ramón Liquet, of lawful age, do solemnly swear: That I have no interest in this matter; that I am a bona fide citizen of Porto Rico, a resident of Maricao, and on the date hereafter to be mentioned I was twenty-five years old; that I received the foregoing summons on August six, 1924, and on the same date I served it at Maricao, P. R., personally on Tomás Quintana, José Avilés and At-

torney Angel A. Vázquez; that as on August six, 1924, Eugenio
Padilla Ríos and Juan Bta. Martínez Rivera were away from the
municipality, I waited until the seventh day of August, 1924, on
which day and at Maricao, P. R., I personally summoned Eugenio Pa-
dilla Ríos and John Bta. Martínez Rivera to appear on the eighth
day of August, 1924, at nine o'clock a. m. before the Justice of the
Peace Court of Maricao at the trial of this case, and that when sum-
moning all and each one of those persons I personally showed them
the foregoing writ of summons.—Maricao, P. R., August 7, 1924.—
(Signed) Ramón Liquet.—No. 89.—Sworn and subscribed to before
me by Ramón Liquet this seventh day of August, 1924.—(Signed)
Francisco Miró, Acting Justice of the Peace of Maricao."

Padilla did not appear on August 8, 1924. However, the court heard the appeal and sustained it, reversing the decision of the Insular Board of Elections and holding that Padilla was not entitled to vote in the municipality of Maricao. It was then that Padilla filed his petition for a writ of certiorari in the District Court of Mayagüez and thereby obtained a reversal of the judgment of the Justice of the Peace Court of Maricao.

In its opinion the district court stated that the summons was written on one of the printed forms used in criminal cases for subpoenaing witnesses. In fact it contains only the warning that if the person served should fail to appear he would be punished for contempt of court, and admitting the truth of the return, it only appears that the writ was shown personally to the persons who were being summoned. There was not only failure to deliver to Padilla a copy of the notice of appeal, which amounts to a complaint, but he was not even served with a copy of the summons.

As maintained by the appellee in his brief, the only thing left to the justice of the peace court was perhaps the right to rule Padilla to show cause why he should not be punished for contempt, but it never acquired jurisdiction to render a judgment against him depriving him of his right to vote, a right which had been acknowledged by the Insular Board of Elections after investigating the matter.

Section 32 of the Election and Registration Law of June 25, 1919, as amended by Act No. 1 of June 18, 1924, reads in part as follows:

"In all cases of appeals from decisions of the Insular Board of Elections as hereinbefore authorized in this section, the municipal court or justice of the peace court shall set one or more consecutive days for the hearing of the same, and on such day or days the said municipal court judges and justices of the peace shall devote themselves to the hearing of such appeals until all of them have been duly heard, and in the hearing of such appeals the courts before which the same may be heard shall have the right, and they are hereby so empowered, to try such cases de novo, and for that purpose to summon and hear witnesses and to require and examine such documents and evidence as they may deem necessary to arrive at a correct decision on the facts and law in such cases; *Provided,* That such cases shall be heard according to the rules of evidence and judicial procedure that govern actions in civil cases. . . ."

It is clearly a speedy and summary proceeding, but it does not mean that a person may be deprived of a right without even knowing that he has been sued and without having been served with a copy of the complaint, but only having been summoned in a manner so confusing that it could be thought that he was being subpoenaed as a witness rather than as a party to the proceeding. The Legislature was careful to provide expressly in the Act, as we have seen, "that such cases shall be heard according to the rules of evidence and judicial procedure that govern actions in civil cases." Under the special circumstances it permits a reduction of time, the greatest possible simplicity in the proceedings and a speedy trial and decision, but it can not permit an absolute failure to give the interested party his day in court.

Other reasons are adduced by the appellee in his brief in support of the judgment appealed from, but as the one stated is fundamental, we shall omit their consideration for the sake of brevity and because of the excess of work before this court.

In regard to the third assignment of error, limiting our examination to the return, we must say that the temerity

of the defendant does not appear therefrom. He may have acted in good faith and therefore should not have been adjudged to pay the costs. In this particular the judgment appealed from should be reversed.

For the foregoing reasons the judgment appealed from must be modified by substituting for the words "and the defendant is ordered to pay the costs" the words "without special imposition of costs," and as modified affirmed.